Case number 24-1079, et al. Jones Lang LaSalle Americas, Inc petitioner versus National Labor Relations Board. Mr. Lominec for the petitioner, Mr. Seid for the respondent. Morning, counsel. Morning. Mr. Lominec, please proceed when you're ready. Thank you. May it please the court. Once again, the board is in court defending the actions of one of its agents in the conduct of an election. And once again, the board's defense is grounded and conflated and confusing standards that are devoid of any reasoned explanation and that fail to adequately protect employee free choice. It seems straightforward for a board agent conducting an election. Don't leave the ballot box unattended and unsealed. Don't leave blank ballots unprotected and don't leave the voting area during a polling session to find potential eligible voters. It seems especially straightforward where as here, the polling periods were only 30 minutes long. So why did this misconduct occur? We don't know. And that's not a question for this court. The question for this court is whether the regional director whose decision the board adopted properly applied the correct legal standard or standards in evaluating JLL's objections and whether the regional director provided a reasoned explanation for the standards she purportedly applied. The regional director expressly recognized in her decision that there are multiple standards when board agent conduct is at issue. She recognized one standard where the conduct tends to destroy confidence in the election or could reasonably be interpreted as impugning the election standards. And the other she recognized considers whether the conduct raises a reasonable doubt as to the fairness and validity of the election. She then acknowledges there are no absolute guidelines before going on to appear to apply the reasonable doubt standard with respect to harsh part of JLL's objections. And then also recognizing that tends to destroy competence standard, at least in a footnote she acknowledges, may apply with respect to the objection concerning the board agent leaving the voting area. What's the difference between the two standards? The primary difference, Your Honor, between the two standards is the degree of prejudice or the degree of harm to which a party who's objecting must show. According to the regional director in some of the board's cases under the reasonable doubt standard, there must be more than speculation. And in other words, just because misconduct occurred, that's not sufficient to overturn the results of an election. That would be okay under that tends to destroy confidence standard? Yes, Your Honor. Going all the way back to Austell and some of the early cases decided by the board that specifically address misconduct by a board agent in connection with a ballot box or blank ballots, the board has consistently held in those cases that appearance is everything, okay? It's destroying the competence in the standards that the board purports to uphold in conducting elections. So it's harder for you to win under the reasonable doubt standard? Our position is it is a tougher standard if the regional director correctly applied the standards to show if you're going to speculate as to what happened, but even under a reasonable doubt standard, the actions of the board agent and wholly leaving the ballot box and blank ballots and then going and looking for eligible voters, that alone, that conduct alone is enough to demonstrate a reasonable doubt as to the fairness and validity of the election. There's parts of your opening brief where it seems like you're arguing for the reasonable doubt standard. So why shouldn't, well, why did you do that if it's a standard? Sure, so the reasonable doubt standard, we mentioned in our opening brief and we cited it as part of the standard of review, but throughout the opening brief and throughout early portions of this case, including in the request for review, which is the initial challenge to the regional director's decision, and then in an expedited request for consideration to the board, and in our opening brief, there is a focus on the regional director applying the wrong standard. And until this court issued GHG management after we filed our opening brief, this court's focus and interest in requiring the board to articulate and explain which standard applies to which objection and to provide that reasoned explanation. Do you think GHG broke new ground or do you think it was just applying laws that already existed? I think GHG broke new ground in the sense that it is the first time in a appellate decision that I've reviewed with respect to board agent misconduct that it calls the board to task for failing to provide that reasoned explanation. So while that standard has always been there, provide a reasoned explanation. Would you concede that the argument you're making about the NLRB insufficiently explaining why it applied different tests at different times in your case, would you concede that that argument is forfeited by not being in your opening brief if we conclude that GHG did not break new ground? I do not concede that at all, Your Honor. Throughout our brief, again, we recognized and we argued both standards. We argued whatever you want to call the standard. And again, as this court has recognized, the board has not been clear at all on this issue. But however you want to describe the standard, it doesn't require us to have a proof that something untoward happened. The offer of proof demonstrated that the board agent left the blank ballot boxes, left the blank, left the ballot box and left the blank ballots and then walked around. That alone is the evidence of the unfairness of the election. And for the board to suggest that that was a waiver issue is inconsequential here. Counsel, can I give you a different perspective and reassurance?  As I read it in your order of proof for the board, it was unclear what standard you meant to have the board apply. You offered a couple. The regional director considered the couple that you recommended. The regional director applied both standards to both alleged unfair labor practices and found that you failed no matter what. So the way I read what the regional director did. And then in your initial brief to us, you said material affected the results of the election is the test, no matter what you think this alleged intervening case says. You said that was the test and the board certainly applied that. I don't know, in all honesty, I have no idea what you're talking about. In your argument today, all the tests that you're talking about, the regional director considered, whether you think it was a clean opinion, it's clean enough for me to understand what the regional director did. And you were not clear to the regional director in saying which standard should apply. And the regional director applied both standards to both alleged unfair labor practices and found that you had not made out any case. Respectfully, your honor, I don't believe that the regional director explained or articulated both standards and found that we did not satisfy both standards in the- So if I can write it that way, you would concede you lose, right? I'm sorry? If I can write it that way, you will concede you lose, right? That the regional director gave consideration to both the standards that you raised. And you were completely unclear as to which one applied in your order of proof. That's what's a little strange in this case. You're self-righteously accusing the board of being confused and your initial order of proof was confused as to what you meant to apply. But the thing that seemed important to me was the regional director replied on both. Whether or not you thought it was as well-written as you would have liked, it was well-written enough to make it clear that both of your alleged standards had been applied and that you would lose on both. And then your initial brief to us without regard to this alleged change in the law, which I don't really understand, you said material affected the results of the election. The board certainly applied that as standard. The regional director and the board applied that standard, which you stated to us in your opening brief was the standard that should govern. Your Honor, we stated that it was the standard, a standard, reasonable doubt, but we also- You said in your opening brief, I went back and looked this morning, I was trying to be sure, on page 11, materially affected the results of the election. That's the standard you said to this court should apply. Right. Then you thought you had something in August because a case came out from this court and you thought you could raise an argument, oh, they didn't fully explain what they intended to do. You said the standard that should be applied was this, the board did apply it, and they said you lose on it. Your Honor, in GHG, the court illustrated why the board must articulate the appropriate standard of consideration of board agent misconduct. There are an awful lot of cases, counsel, in this area and in other agency cases where if an agency applies all of the alleged standards to all of the alleged illegal conduct and says you fail under all of them, that's enough. And that's what happened here. Well, the regional director's decision acknowledged multiple tests and then cited cases in her decision as to prior board agent misconduct as it relates to ballot boxes. But again, in GHG, this court recognized that that's not enough, and for us to- No, counsel, you're missing my point. If what the agency does is to say, okay, here are all the tests, now here's your claim. We're gonna apply all of those tests to all of these facts, and every time we apply it to all of your alleged ULPs, you lose. That's perfectly okay. Well, I don't- You're in real trouble if the agency says every test that you lay out here, we're gonna apply to your alleged mistake, and we're gonna find you have no merits. But I'm not, I don't agree that she did that. If she did that, the conduct itself, leaving the ballot box, leaving the blank ballots, walking around, that conduct itself raises a reasonable doubt. It also fits squarely with some of the prior board cases, which hold that the mere appearance alone cast doubt on the integrity of the election. Do you agree that the regional director, at least however you read the decision, made a determination that the alleged problems here did not materially affect the results of the election? I believe that she conflated and confused the standards, and- You think she made that determination? I think she- With a fair reading of the decision, cause a person to say, she was determining, however badly you think she wrote it, she was determining that this conduct did not materially affect the results of the election. Wasn't that her determination? That was certainly what her determination was. And that's your standard. You stayed in the opening brief, and that's why you should lose. That's the standard you said to this court should be applied. I agree. And you acknowledge that the regional director applied that standard. But we didn't acknowledge that we lose under that standard either, right? No, I understand you're saying, notwithstanding that, we should still win. That's a different point. But you certainly acknowledge that standard, and you agree the regional director applied it. She applied the standard, but again, in light of GHG, she has to do more than that. So for example, you mentioned, well, no matter how poorly her decision was written or reasoned, well, that is precisely what GHG management says you can't do, board. You can't just cite a bunch of standards. You can't cite prior case law and say, oh, this is different from that case, and so we're gonna apply this, and here's my decision. You can't do that. That's what this court says she cannot do. And throughout our offer of proof, the request for review, and even in the opening brief, we relied on and argued that there must be an element of appearance at issue, and it's not enough to just say, nothing happened, so what's the big deal? That's not appropriate. GHG. I think she did more than that. I'll try not to have additional questions for you. No. Okay, we'll give you a little time for rebuttal. Thank you. You're from board counsel now. Thank you, Your Honor. Mr. Seid. Good morning, Your Honor. May it please the court, David Seid for the Labor Board. Happy to discuss the particular merits with respect to each part of the company's objection, but if I could just go directly to the allegation that the board applied different standards to different parts of the objection. As Judge Edward indicates, the company not only admitted in its opening brief that reasonable doubt is a proper standard, and therefore has waived that claim by trying to raise it for the first time in the reapply brief. In fact, its opening brief doesn't even mention the language of the supposed second standard, or even cite to a case that contains such language. And then just also, this court simply has no jurisdiction to consider it because it was obligated to have raised it to the board, which again, like its opening brief, it never did before the board. But just very briefly, even if this was somehow before the court, which it isn't, as Judge Edward indicates, the regional director's decision discussed the reasonable doubt standard, said there's some different language that is used at times, but then very specifically at page 40, says at bottom, the test is reasonable doubt. However, the judge then goes on, as I think Judge Edward's indicated, at appendix page 41, the employer argues that the board agents above conduct impugn the integrity of the election and proceeds to find that it rejects that argument. And then at page 43, note seven, the judge proceeded in addressing the second part of the objection to cite to two cases, the Polymers case, which of course sets forth the reasonable doubt standard, as well as the Athro case, which does use tenancy to destroy language. So the regional director clearly, to the extent that anything other than reasonable doubt applied, covered by including cites to both cases. And I would also just finally point out, unlike the GHG case, the company here has not shown that to the extent different language may be used at times, that the overall burden placed upon it to show a material effect on the election and to show more specific evidence, that that's not the ultimate responsibility, regardless of what language is used, nor has it made any argument that the result would be different. And again, as indicated, the regional director clearly, to the extent there is even an arguably a different standard applied and looked at both parts of the language, not just reasonable doubt, but also a tendency to destroy. And I thought of a GHG, which I know a little bit about since I'm the author. The predicate for the analysis was the different, the board's implicit understanding in that case, that the difference between the two standards actually could be outcome determinative. That is correct, your honor. So that was a situation again, as I'm sure you're all aware, the where there is alleged voter disenfranchisement and the board applied a different standard, whether the voter disenfranchisement was based on something the board agent did or versus something that someone else did, such as the postal service. Here, we are ultimately dealing only with conduct by the board agent. And again, the company, besides not even raising the issue about different standards to this court timely or properly, hasn't even argued that ultimately there would be any difference in whatever language is used or that the outcome would be different. Unless this court has any... One quick question. It's not appropriate for the NRB agent to go get out the vote, right? Like what happened here? Look, your honor, the board's case handling manual does not, which is a guideline to start with, does not contain any language that prohibits a board agent from checking to see if somebody is outside the door waiting to vote or seeking to vote. It would be inappropriate, if arguably if the board agent compelled somebody to vote or when searching throughout the facility, seeking to try to find voters, but there's no evidence that that's what occurred here. I thought that the agent here, at least was alleged to have encouraged them to vote, which is a step beyond what you're saying is allowed. Correct. So the allegation here with respect to that objection is that part of the objection is that the board agent compelled somebody to vote. And all the proper shows is that the board agent indicated that he was going to see if anyone was around to vote, left very briefly. There's a gap between seeing if there's anyone left to vote, which, okay, maybe that's allowable, and compelling someone to vote, which is not allowable. Somewhere in between there is not compelling someone to vote, but encouraging them to vote. And it seems like that's also improper. Correct, but here, I cannot emphasize enough, it was incumbent upon the employer in its offer of proof to present some sort of evidence that an employee was forced or compelled to vote. Here, not only did it not fail to proffer such evidence- You keep saying forced and compelled, but I'm just trying to, it may well not matter for this case, but I'm just trying to get some clarity. It is improper for an NLRB agent to encourage someone to vote, correct? It would generally be improper based on, again, on the particular facts of the case. And here, the evidence does indicate, at least for one employee, that that employee was actually simply waiting outside, thinking that he had to wait outside to be called to come in to vote. So it was incumbent upon the company to have shown more, which it simply did not do here. And I just want to follow up on this just out of curiosity, is encouraging somebody to vote, if there's undisputed evidence that what a board agent does is go out and tell people, look, you should know that the polls close in 15 minutes. You know, if you want to vote, you should vote. Is that improper? Your Honor, I'm simply not aware of the board ever addressing that type of fact situation. And as this court knows, the board does address cases on a kind of fact by case-by-case basis based on the facts. So it simply would not be appropriate for me to speculate if that's all an agent did was to let somebody know that the polls were going to be closing, as opposed to going out and actually telling somebody, hey, come with me, you have to vote, or certain foreign voters. Right, the compelling one is easy. I guess on the, something short of compelling, which is just notification that if you need to vote, you should vote, or even encouraging, or even saying, you know, you should vote. I'm not telling you which way to vote. I don't care which way you vote. You should just vote. Is that acknowledged? Yeah, I'm not aware. Certainly, as, and not trying to avoid the question, certainly compelling is on one side of the equation. I'm not aware, honestly, in during elections, if it's ever announced that the polls will be closing in 10 minutes or in 15 minutes to make sure that people who haven't voted yet have the opportunity to do so, particularly when polls may be open for three, four, five, six hours. I don't, I honestly do not know if announcements are ever made to that effect. And if they would be improper, if they were. And if, correct, Your Honor. But I mean, the main point here is this is contextual. The board regional director is looking at the facts that have been offered to determine whether or not it's likely to have adversely affected the rights of the employees. And I think the finding here, as I understand it, is this is nonsense. One person was just standing there waiting to vote, certainly was not encouraged to do anything. And all the board person responsibly doing was to let the person know it's available if you want. But in any event, it's a determination that is made based on the context presented. And I think the finding here was, there was nothing to show that this failed any one of the tests that are applicable, right? That's correct. Okay, thank you. Your Honor, the board would simply ask that the court enforce its order. Thank you, Your Honor. Thank you. Melomenak, we'll give you two minutes for a rebuttal. Thank you. Briefly, Your Honor. In its request for review, the employer specifically and expressly argued that the regional director found no evidence of harm, but this is not the appropriate standard. Longstanding board precedent holds that an election must be set aside when there's even an appearance of an irregularity. In the request for expedited consideration, JLL argued that the regional director focused on the heightened standard for setting aside elections. Throughout the opening brief, despite recognizing the reasonable doubt standard as a standard for review of these board decisions, JLL relied heavily on Austell and Athbro and other cases in which harm need not be shown. But regardless, Your Honors, even under a reasonable doubt standard, JLL was deprived of a hearing, and it wasn't because there wasn't a proffer of evidence of misconduct that led to harm. There was an absolute proffer of evidence of misconduct in the form of the board agent leaving the blank ballots, leaving the ballot box unattended, and walking around. That is enough evidence, at least in an offer of proof, to warrant a hearing to validate whether that was appropriate under a long line of board cases. Judge Walker. You don't allege that the two people, the last two people to vote, you don't allege that they would have voted against the union had the election been conducted in a pristine manner, correct? That's a reasonable speculation. There was no offer of proof of that. That's a reasonable consequence of allowing a board agent to, or not keeping a board agent within the polling area and not having others around to observe it. But there's no, I don't hear in your answer, any evidence that those two voters would have voted against the union. There is no evidence that was proffered. They might have not voted at all. Correct. That maybe is a fair inference. But if they had not voted at all, the election result would have been the same, correct? Presuming that nothing untoward happened in the polling area when the board agent was out and the ballot boxes, a ballot box was unsealed and blank ballots were left there. Again, it's speculation. Where was that observer there? I'm sorry? Where there were observers from both sides there. There were observers from both sides there. One for the employer who was not an actual voting employee, but that's not sufficient to satisfy the standard of whether it's conduct that impugns the election standards. And certainly enough evidence based on the board's prior precedents to warrant a hearing to develop this and then allow the regional director and ultimately the board to make a reasoned explanation for why it is deciding what it is deciding. Thank you. Thank you, counsel. Thank you to both counsel to keep this case under submission. Thank you.
judges: Srinivasan; Walker; Edwards